UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80173 CR Ryskamp

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MICHAEL RANDLE,

      Defendant.
_____/

## PLEA AGREEMENT

The United States of America and Michael C. Randle (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to a one-count Information, which charges him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371.

2. The defendant is aware that the sentence will be imposed by the court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory

guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the court may impose a statutory maximum term of imprisonment of up to five, followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater. Finally, the court must also order restitution.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

5. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of

punishment.

6. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. ' However, the United States will not be required to make this motion and recommendations if any of the following occurs: (1) defendant fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct and the defendant's financial status; (2) defendant is found to have misrepresented facts to the government prior to entering this plea agreement; and (3) defendant commits any misconduct after entering into this plea agreement, including, but not limited to, committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed.

   a. <u>Base Offense Level</u>: That the base offense level is six, pursuant to Sections 2B1.1(a)(2);

b. <u>Loss</u>: That the relevant amount of actual, probable or intended loss resulting from the offense committed in this case is more than $1 million, but not more than $2.5 million, resulting in a sixteen-level enhancement, pursuant to Section 2B1.1(b)(1)(I) of the Sentencing Guidelines;

c. <u>Number of Victims</u>: That the offense involved ~~more than~~ 10, ~~but less than 50~~ victims, resulting in a two-level enhancement pursuant to Section 2B1.1(b)(2)(A);

d. <u>Sophisticated Means</u>: That the parties have no agreement as to the applicability of an enhancement pursuant to Section 2B1.1(b)(9)(C);

e. <u>Deriving More than $1 Million From Financial Institutions</u>: That the defendant did not derive more than $1 million in gross receipts from one or more financial institutions, and therefore a two-level enhancement pursuant to Section 2B1.1(b)(13)(A) is not applicable; and

f. <u>Role in the Offense</u>: That the defendant did not play an aggravating or mitigating role in the offense, and therefore no role enhancements, pursuant to Sections 3B1.1 or 3B1.2, are applicable.

8. The defendant agrees that he shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he that he will not commit any further crimes.

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

10. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the government. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

11. If the defendant in fact pleads guilty and otherwise fully complies with the provisions of this Agreement, the United States agrees not to bring additional charges against the defendant for the conduct outlined in the Information, or any other conduct known to the government at the time that the defendant's guilty plea is entered, and further agrees that information provided to the

Government by the defendant pursuant to this Agreement will not be used against him for sentencing purposes, pursuant to Section 1B1.8 of the United States Sentencing Guidelines, unless the defendant (1) lies or (2) takes a contrary position at sentencing to his truthful information given during his meetings with the government. In that case, the defendant would not receive the protections of USSG §1B1.8, and his statements could be used at sentencing.

12. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

13. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

14. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 11/4/11

By: _____
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

I have read and carefully reviewed every part of this Agreement with my attorney, Janice A. Singer-Capek, and voluntarily agree to its terms. No one has threatened or coerced me in any way into entering into this Agreement.

Date: 11/4/11

_____
MICHAEL C. RANDLE
DEFENDANT

I, Janice A. Singer-Capek, am the attorney for Michael C. Randle. I have explained to him the terms and conditions set forth above and are satisfied that he understands and agrees to them.

Date: 11/4/11

_____
JANICE A. SINGER-CAPEK, ESQ.
ATTORNEY FOR DEFENDANT

*Exhibit A*

| Bank/Credit Union Institution | Borrower Name | Loan Type | Date | Attempted Amount | Funded Amount | Date Funded | Method | Dealer | Employer | Vehicle Year | Vehicle Make | Vehicle Model | VIN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BMW Financial Services | UCE-3318 | Auto | 3/28/2011 | $123,679.05 | $123,679.05 | 4/7/2011 | ACH | Towbin Automotive | | 2007 | Bentley | GTC | SCBDR33W17C046537 |
| GE Money Bank | UCE-3318 | Personal | 3/15/2011 | $18,000.00 | $18,000.00 | | | | | | | | |
| Agriculture Federal Credit Union | S.B. | Auto | 3/24/2011 | $40,000.00 | $- | | | Posh Auto Dealers | Guarantee Enterprise Inc | 2011 | Porsche | Cayenne | WP1AA2A26BLA03918 |
| Agriculture Federal Credit Union | S.B. | Credit Card | 3/24/2011 | $5,000.00 | $- | | | | Guarantee Enterprise Inc | | | | |
| Agriculture Federal Credit Union | UCE-3318 | Auto | 3/25/2011 | $76,000.00 | $- | | | | | | Porsche | | |
| Agriculture Federal Credit Union | UCE-3318 | Credit Card | 3/25/2011 | $20,000.00 | $- | | | | | | | | |
| Agriculture Federal Credit Union | W.B. | Auto | 3/25/2011 | $60,000.00 | $- | | | | Chase Capital Mngmt | | BMW | | |
| Agriculture Federal Credit Union | W.B. | Credit Card | 3/25/2011 | $5,000.00 | $- | | | | Chase Capital Mngmt | | | | |
| Agriculture Federal Credit Union | J.M. | Auto | 4/2/2011 | $35,000.00 | $- | | | | | | | | |
| Agriculture Federal Credit Union | J.M. | Credit Card | 4/2/2011 | $7,500.00 | $- | | | | | | | | |
| Northrop Grumman Federal Credit Union | UCE-3318 | Auto | 3/15/2011 | $75,017.92 | $75,017.92 | 3/23/2011 | Check | Posh Auto Dealers | | 2010 | Porsche | Panamera | WP0AB2A75AL062385 |
| Xceed Financial Federal Credit Union | UCE-3318 | Auto | 3/15/2011 | $75,040.00 | $- | | | | | 2010 | Porsche | Panamera | |
| Xceed Financial Federal Credit Union | UCE-3318 | Auto | 4/11/2011 | $49,874.92 | $- | | | Posh Auto Dealers | | 2010 | Audi | Q7 | WA1VMAFEGAD003069 |
| Western Federal Credit Union | UCE-3318 | Auto | 3/15/2011 | $75,040.00 | $- | | | Posh Auto Dealers | | | | | |
| Pentagon Federal Credit Union | Mijares, James & Angela Randle | Auto | 4/18/2011 | $47,000.00 | $47,000.00 | 4/18/2011 | Check | | | 2010 | Porsche | | WP1AA2A26BLA03918 |
| Infiniti Financial Services/Nissan Motor Acceptance Corp. | A.C. | Auto | 3/19/2011 | $74,022.55 | $74,022.55 | | | Towbin Infiniti | | 2011 | Infiniti | QX56 | JN8AZ2NE7B9004706 |
| BMW Financial Services | A.C. | Auto | 3/15/2011 | $96,297.00 | $96,297.00 | | | Desert BMW of Henderson | | 2011 | BMW | 750 Series | WBAKBBC53BC851961 |
| Navy Federal Credit Union | A.C. | Auto | 3/2/2011 | $45,000.00 | $- | | N/A | | | | | | |
| Navy Federal Credit Union | K.N. | Auto | 12/29/2010 | $45,000.00 | $45,000.00 | 1/13/2011 | | | Chase Capital Mngmt | | | | |
| Navy Federal Credit Union | K.N. | Personal | | $30,000.00 | $30,000.00 | 1/19/2011 | | | Chase Capital Mngmt | | | | |
| Purdue Federal Credit Union | K.N. | Auto | 1/26/2011 | $47,500.00 | $- | | | | Chase Capital Mngmt | 2007 | Mercedes | S550 | |
| Fort McPherson Credit Union | V.C. and M.L. | Auto | 3/25/2011 | $29,790.00 | $29,790.00 | 3/25/2011 | | Posh Auto Dealers | | | | | |
| Purdue Federal Credit Union | V.C. | Auto | 2/9/2011 | $34,000.00 | $- | | | | Guarantee Enterprise Inc | 2007 | Audi | S4 | |

| Bank/Credit Union Institution | Borrower Name | Loan Type | Date | Attempted Amount | Funded Amount | Date Funded | Method | Dealer | Employer | Vehicle Year | Vehicle Make | Vehicle Model | VIN |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USAA Savings Bank | A.S. | Personal | | $15,000.00 | $15,000.00 | | | | Gurantee Management Enterprises | | | | |
| USAA Savings Bank | T.J.W. | Auto | 2/24/2010 | $49,500.00 | $49,500.00 | | | Posh Auto Dealers | | 2006 | Maserati | Quattroporte | ZAMCE39A260024008 |
| USAA Savings Bank | C.K. | Personal | 1/14/2010 | $15,000.00 | $15,000.00 | | | | | | | | |
| USAA Savings Bank | C.K. | Auto | 1/22/2010 | $55,000.00 | $- | | | Relentless Auto | | 2008 | Porsche | Cayenne | WP1AB29P68LA74598 |
| USAA Savings Bank | D.W. | Personal | 1/29/2010 | $25,000.00 | $- | | | | | | | | |
| USAA Savings Bank | D.W. | Auto | 1/29/2010 | $54,861.50 | $54,861.50 | | | Relentless Auto | | 2009 | Mercedes | CLS 550 | V000572X99A149720 |
| 66 Federal Credit Union | C.K. | Auto | 3/18/2011 | $49,945.92 | $49,945.92 | | | Posh Auto Dealers | | 2010 | Audi | Q7 | WA1VMAFE6AD003069 |
| 66 Federal Credit Union | C.K. | Personal | 5/21/2011 | $5,000.00 | $5,000.00 | | | | | | | | |
| JP Morgan Chase | Michael Randle using SS of K.C. | Auto | 12/1/2008 | $55,351.00 | $55,351.00 | | | | | 2008 | Cadillac | Escalade | 1GYFK668A8R237158 |
| | | | | $1,458,419.86 Total Attempted | $783,464.94 Total Funded | | | | | | | | |

<u>United States v. Michael Randle</u>
Case No. 11-80173-CR-RYSKAMP/HOPKINS

### FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

If this case had proceeded to trial, the Government would have established beyond a reasonable doubt that defendant Michael C. Randle did knowingly and willfully conspire with others to knowingly and with intent to defraud execute and cause the execution of a scheme and artifice to defraud financial institutions and financial services companies through the submission of false and fraudulent loan and line of credit applications and related financial documents on behalf of unqualified borrowers.

The elements of this offense are as follows:

| | |
|---|---|
| First: | That two or more persons in some way agreed to try to accomplish a shared and unlawful plan, that is, bank and wire fraud; |
| Second: | That the defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | That during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the information; and |
| Fourth: | That the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The elements of bank fraud are as follows:

| | |
|---|---|
| First: | That the defendant carried our or attempted to carry out a scheme to defraud a financial institution and to get money, assets, or other property from a financial institution by using false or fraudulent pretenses, representations, or promises about a material fact; |
| Second: | That the false or fraudulent pretenses, representations, or promises were material; |
| Third: | That the defendant intended to defraud the financial institution; and |
| Fourth: | That the financial institution was federally insured. |

The elements for wire fraud are as follows:

First: That the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

Second: That the false pretenses, representations, or promises were about a material fact;

Third: That the defendant acted with the intent to defraud;

Fourth: That the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

To prove that the defendant committed the offense charged in the Information, the Government would establish beyond a reasonable doubt the following evidence:

Beginning in approximately December 2010, defendant Michael C. Randle and his co-conspirators recruited individuals with good credit to act as borrowers for fraudulent loan and line of credit applications. Defendant claimed to have contacts at various financial institutions who would assist him in obtaining the fraudulent loans. To induce the borrowers to participate in the scheme, the defendant and his co-conspirators promised to pay the borrowers a portion of the loan proceeds once the loans were funded.

Once the defendant confirmed that a borrower had good credit, he or a co-conspirator would prepare the fraudulent loan or line of credit application in the name of the borrower. The application would falsely state that the borrower had sufficient income and assets to qualify for the loan or line of credit. In support of the fraudulent applications, the defendant and his co-conspirators created false and fraudulent financial and identification documents, including false pay stubs, false employment verifications, false bank statements, and false social security cards. The financial documents contained numerous false statements, including false employment information, false or inflated income, and false asset information. In some instances, the defendant or a co-conspirator would direct the borrower to sign the fraudulent loan documents and send them via facsimile from the Southern District of Florida, to the defendant in Alpharetta, Georgia. Other times, the defendant or his co-conspirator would simply forge the borrower's name on the fraudulent loan documents.

The defendant and his co-conspirators submitted the fraudulent loan and line of credit packages to the federally insured financial institutions and financial services companies identified in the attached spreadsheet marked as Government Exhibit A. Relying on the fraudulent financial

documents, ten of the financial institutions and financial services companies funded the fraudulent loans and lines of credit.

Most of the fraudulent loan applications falsely claimed that the borrowers needed the funds to purchase high-end cars, including a Porsche Cayenne, a Porsche Panamera, an Infiniti QX56, a Bentley GTC, an Audi Q7 and S4, a BMW 750 Series, a Maserati, and a Mercedes S550. Many of these auto loans were sent to the lenders through the defendant's auto dealership, Posh Auto Dealers, located in Alpharetta, Georgia. When the loans were funded, however, the defendant rarely used the proceeds to purchase the cars, as represented in the loan documents. Instead, the defendant and his co-conspirators used the fraudulently obtained proceeds to make loan payments, to pay-off the borrowers, and to enrich themselves. After several months, the defendant and his co-conspirators would stop making payments, and the loans would go into default. Because the financial institutions and financial services companies did not have the cars as collateral, they suffered substantial losses on these loans.

In a few instances, the defendant and his co-conspirators used the loan proceeds to purchase a car. For example, in March 2011, the defendant submitted a fraudulent loan application to BMW Financial Services, on behalf of an undercover agent posing as a borrower, seeking a $123,679 loan to purchase of a 2007 Bentley GTC. BMW Financial Services funded the loan, and the defendant used the proceeds to purchase the Bentley. When the undercover agent questioned the defendant about the Bentley, the defendant stated that he planned to lease the Bentley for several months, and then sell it using a fraudulently obtained title.

During the course of the bank and wire fraud conspiracy, which spanned from December 2010 through April 2011, in Palm Beach County and elsewhere, the defendant caused the submission of the fraudulent loan and line of credit packages set forth in Exhibit A attached hereto. As reflected in Exhibit A, many of the loans and lines of credit were actually funded, resulting in substantial losses to the financial institutions and financial services companies.

In furtherance of the conspiracy, the defendant or one of his co-conspirators committed the four over acts set forth on pages 4 - 5 of the Information, including the defendant's statement on April 21, 2011, in a recorded telephone call with an undercover agent posing as a borrower, that he had obtained a 2007 Bentley GTC from a car dealership in Las Vegas utilizing the undercover agent's credit information.

Finally, the Government would prove beyond a reasonable doubt the following relevant conduct. In December 2008, the defendant obtained identification information for a person and, without her knowledge or consent, used the information to create a false and fraudulent car loan application. The fraudulent loan application sought a $55,351 car loan to purchase a 2008 Cadillac Escalade. The defendant caused the submission of the fraudulent car loan application containing false financial information to JP Morgan Chase. Relying on the false loan application, JP Morgan Chase funded the car loan, and the defendant used the fraudulently obtained proceeds to purchase a 2008 Cadillac Escalade. After a short period of time, the defendant stopped making the loan

payments and the loan went into default, causing a substantial loss to JP Morgan Chase.

Wifredo A. Ferrer
United States Attorney

By: _____    11/4/11
Adrienne Rabinowitz                 Date
Assistant United States Attorney

I have read and reviewed with my attorney the above statement of facts and stipulate that the facts are true and correct.

_____    11/4/11
Michael C. Randle              Date
Defendant

_____    11/4/11
Janice Singer-Capek, Esq.       Date
Counsel for Defendant

-4-